# UNITED STATES DISTRICT COURT
для
Southern District of California

FILED
JAN 24 2020
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Black Cricket LG Cellular Phone
Seized as FP&F No. 2020250600037501

Case No. **20MJ0299**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference

located in the __Southern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952 and 960 | Importation of Methamphetamine & Fentanyl |

The application is based on these facts:

See attached Affidavit of Special Agent

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Joseph S. Cuttitta Jr. Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: January 24, 2020

*Judge's signature*

City and state: San Diego, CA     Hon. Andrew G. Schopler, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Special Agent Joseph S. Cuttitta Jr , being duly sworn, hereby state as follows:

## INTRODUCTION

1.  I submit this affidavit in support of an application for a warrant to search the following electronic device:

> Black Cricket LG Cellular Phone
>
> Seized as FP&F No. 2020250600037501
>
> (**"Target Device"**)

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Section(s) 952 and 960, as further described in Attachment B.

2.  The requested warrant relates to the investigation and prosecution of Aaron Dario ACOSTA Cervantes ("ACOSTA") for importing approximately 20.28 kilograms (44.71 pounds) of a mixture and substance containing a detectable amount of methamphetamine and approximately 13.60 kilograms (29.92 pounds) of a mixture and substance containing a detectable amount of fentanyl from Mexico into the United States. *See United States v. Aaron Dario ACOSTA Cervantes*, Case No. 20MJ0252 (S.D. Cal.) at ECF Nos. 1 (Complaint). The **Target Device** was seized from ACOSTA at the time of his arrest, has been securely stored since that time, and is currently in the evidence vault located at 2255 Niels Bohr Court, San Diego, CA 92154.

3.  The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

4.  I am a Special Agent with Immigrations and Customs Enforcement (ICE), Homeland Security Investigations (HSI) and have been so employed for about 22 years. I

1

am currently assigned to Contraband Smuggling Group 2. My duties include investigating the trafficking of illicit controlled substances and the importation and distribution of illegal substances. I am a graduate of the Immigration Officer Academy Training Program at the Federal Law Enforcement Training Center in Brunswick, Georgia. I have received training conducting narcotics smuggling investigations and the enforcement of numerous customs and immigration laws within the United States.

5. During my tenure with HSI, I have participated in the investigation of various drug trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. I have also received specific training in the methods used by narcotics traffickers to import and distribute drugs, including training regarding the use of cellular phones and other electronic devices by narcotics traffickers to operate large distribution networks.

6. Through my training, experience, and conversations with other members of law enforcement, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at U.S. Ports of Entry. I am aware that it is common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones. Because they are drug trafficking organizations are mobile, the use of cellular telephones permits narcotics traffickers to easily carry out various tasks related to their trafficking activities, including, *e.g.*, remotely monitoring the progress of their contraband while it is in transit, providing instructions to drug couriers, warning accomplices about law enforcement activity, and communicating with co-conspirators who are transporting narcotics and/or proceeds from narcotics sales.

7. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as

emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in narcotics trafficking investigations, I am aware that individuals engaged in drug trafficking commonly store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in drug trafficking, as well as images and videos of drugs or contraband, proceeds and assets from drug trafficking, and communications to and from recruiters and organizers.

8. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

   d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

9. On January 21, 2020, at approximately 2:40 pm, Aaron Dario ACOSTA Cervantes, ("ACOSTA"), a United States citizen, applied for entry into the United States from Mexico through the Otay Mesa POE in vehicle lane #5. ACOSTA was the driver, and sole occupant, of a 2007 Nissan Altima ("the vehicle") bearing California license plates.

10. A Canine Enforcement Team (CET) was conducting pre-primary operations when the Human and Narcotic Detection Dog alerted to the trunk of the vehicle. For officer safety they had ACOSTA move the vehicle up to the primary booth. A Customs and Border Protection Officer (CBPO) had ACOSTA open the trunk of the vehicle. There was a large speaker box in the trunk of the vehicle. The CBPO inspected the speaker box, finding cellophane wrapped packages inside. A Customs and Border Protection Officer received two negative Customs declarations from ACOSTA. ACOSTA stated to the CBPO that the vehicle was his. ACOSTA stated he was crossing the border to go to San Diego, California. A CBPO operating the Z-Portal X-Ray machine detected anomalies in the speaker box and the rear doors of the vehicle. Further inspection of the vehicle resulted in the discovery of 35 total packages concealed in the speaker box and rear doors of the vehicle. 23 of the packages contained a substance, a sample of which field tested positive for the characteristics of methamphetamine, with a total approximate weight of 20.28 kgs (44.71 lbs.); and 12 of the packages contained a substance, a sample of which field tested positive for the characteristics of fentanyl, with a total approximate weight of 13.60 kgs (29.92 lbs.). ACOSTA was placed under arrest at approximately 5:15 pm. During a post-Miranda interview, ACOSTA denied knowledge that the narcotics were in the vehicle. ACOSTA stated that he was going to UCSD to pick up paperwork for his schooling. ACOSTA also stated that he was going to pick up approximately $5000.00 USD for a friend to bring back to Mexico. ACOSTA was arrested and charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance.

11. Based upon my experience and investigation in this case, I believe that the

**Target Device** contains evidence of violations of Title 21, United States Code, Sections 952 and 960. Specifically, I believe that ACOSTA and other persons as yet unknown, were involved in an ongoing conspiracy to import methamphetamine or other federally controlled substances into the United States. Based on my experience investigating narcotics smugglers, I also believe that ACOSTA may have used the **Target Device** to coordinate with co-conspirators regarding the importation and distribution of controlled substances, and to otherwise further this conspiracy both inside and outside of the United States.

12. In my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Given this, I respectfully request permission to search the **Target Device** for data from November 21, 2019 through January 22, 2020 which was the day following ACOSTA's arrest.

## METHODOLOGY

13. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network.

Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

14. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

15. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

16. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

17. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device** will yield evidence of ACOSTA's violations of Title 21, United States Code, Sections 952 and 960.

18. Because the **Target Device** was seized at the time of ACOSTA's arrest and has been securely stored since that time, there is probable cause to believe that such

evidence continues to exist on the **Target Device**. As stated above, I believe that the appropriate date range for this search is from November 21, 2019 through January 22, 2020.

19. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Special Agent Joseph S. Cuttitta Jr
Homeland Security Investigations

Subscribed and sworn to before me this 24th day of January, 2020.

Honorable Andrew G. Schopler
United States Magistrate Judge

7

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

>Black Cricket LG Cellular Phone
>
>Seized as FP&F No. 2020250600037501
>
>(**"Target Device"**)

The **Target Device** is currently in the possession of Homeland Security Investigations, 2255 Niels Bohr Court, San Diego, CA 92154.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period from November 21, 2019 through January 22, 2020:

a. tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.